WHITE and another *against* the Lessee of KYLE.

IN ERROR.

</div>

*Sunbury,*
*Saturday,*
June 13.

A settlement
made on lands
not purchased
from the *In-*
*dians,* cannot be
the foundation
of any title, legal
or equitable, un-
less connected
with a special
promise from
the proprieta-
ries or their
agents.

A warrant
calling for an
improvement
made by *A,* can-
not be supported
by an improve-
ment made by
*B,* nor can it be
so connected
with any after
purchased im-
provement as to
vest a title.

Persons set-
tled upon land
not purchased of
the *Indians,* and
receiving from
the proprietary
agent a promise
of confirmation,
were bound to
apply for the
confirmation at
the opening of
the land office
for those lands,
promise.

THIS was an ejectment for lands in *Mifflin* county, the title to which on both sides is stated in the first volume of these Reports, p. 247.

Upon the trial of the cause, the opinion of the court below was requested upon various points, of which two only are material. 1. Whether any improvement, made before the land on which it was made was purchased from the *Indians,* can vest any interest either in law or equity, unless connected with a special promise from the proprietaries or their agents. 2. Whether a warrant calling for an improvement made, can be supported by an improvement made by any other than by him named in the warrant? And whether an improvement purchased after the date of the warrant, can in any wise support an equity claimed under the warrant?

On the 1st point, the court gave their opinion that such an improvement would vest an equity, without a special promise. On the 2d, that a warrant calling for an improvement made, could be supported by an improvement made by another person than by him named in the warrant; and that an improvement purchased after the date of the warrant, will vest an equitable as well as a legal claim.

The defendants tendered a bill of exceptions; and the points were here argued on their behalf by *Watts* and *Duncan,* and by *Huston* for the defendant in error, who was plaintiff below.

or within a reasonable time afterwards, or they lost the benefit of the promise.

TILGHMAN C. J. On the trial of this ejectment, the opinion of the Court of Common Pleas was asked on seven points on the part of the defendant, who is plaintiff in error in this court. But our decision is requested on only two of those points, viz. the 1st and 5th.

The 1st question is whether any title, legal or equitable, could be acquired by a settlement made on lands before they were purchased by the late proprietaries from the *Indians*, without a special promise from the proprietaries to the settler. The opinion of the court below was that an equitable title might be acquired.

This is a question of very easy solution. It was the uniform custom of the late proprietaries, not to exercise any act of ownership in the soil contained in their charter limits, before they had come to an agreement with the natives. They made no surveys on the unpurchased lands, either for themselves or others, without the consent of the natives; and this policy, founded on the plainest principles of justice and good sense, was adopted by the legislature. So early as the year 1700, an act of assembly was passed, declaring void all purchases of land made by private persons from the *Indians*, without permission of the proprietary. It appears that great discontent prevailed among the *Indians* at the intrusion by the white people on the very lands now in dispute. So much so, that in order to appease them, *Richard Peters*, then secretary of the land office, went with some magistrates, for the express purpose of removing the settlers, and they were removed, and their houses burnt. But in order to conduct the matter as speedily and with as little disturbance as possible, Mr. *Peters* promised some of the settlers, particularly *William White*, deceased, under whom the defendants claim, who had great influence, that if they would remove quietly, their lands should be granted to them after the proprietary should purchase them of the *Indians*. Now how is it possible, that a settlement made against law, against justice, against policy, and manifestly tending to involve the country in war, should be a ground of any title in law or equity? The very point was decided by this court before, when a new trial was ordered in this cause, 1 *Binn.* 246; and if it had never been decided, it is too clear to admit of the least doubt. It is one of those self-evident propositions,

which cannot be rendered plainer by any process of argument. So at least it appears to me, and I cannot help supposing, that when the court below passed their opinion upon it, they took into view some facts not appearing on the record.

The other decision, which has been objected to, is as follows. That a warrant calling for an improvement may be supported by an improvement made by a person different from the one named in the warrant, and that an improvement purchased *after* the date of the warrant, will vest not only an equitable but a legal title.

In order to understand this opinion, which stands in the form of an abstract proposition, we must consider the evidence to which it referred. *James Kyle* took out a warrant the 23d of *October* 1765, for 200 acres *including his improvement.* Previous to that time, he had made an improvement *of his own,* to which the warrant was applicable. But in *September* 1766, he obtained a conveyance of the right of *George Gabriel,* who is said to have made some kind of improvement before the proprietary's purchase from the *Indians* in the year 1754, and the plaintiff's counsel contended that Mr. *Peters* had promised *Gabriel* that his title should be confirmed. It was competent to *Kyle* to purchase as many titles as he pleased, and to defend himself under all or any of them. But they must be considered as *distinct titles.* He cannot take a warrant for his own improvement, and connect it with an after purchased improvement, because such was not his contract with the proprietary, who might have reasons for confirming the title of one improvement though not of the other. But as to *Gabriel's* improvement, if he received a promise of confirmation from Mr, *Peters,* he ought to have applied to the land office, at its opening for the sale of these lands in *February* 1755, or within a reasonable time afterwards. By not making such application he lost the benefit of the promise. It would be altogether unreasonable to call for a confirmation after a delay of ten years. In no point of view, therefore, could *Kyle* attach the improvement of *Gabriel* to his warrant taken out in the year 1765.

I am of opinion that the decision of the court below was erroneous on both points, and therefore the judgment must be reversed, and a *venire facias de novo* be awarded.

YEATES J. It has been admitted in the course of this argument, that no right of pre-emption could be founded on a settlement made on lands comprehended in the *Indian* purchase of *November* 1768, at *Fort Stanwix;* but a distinction has faintly been attempted between that and other purchases made of the natives. I can see no ground whatever for a difference between the cases. At all times it has been declared unlawful to settle upon lands unpurchased from the *Indians;* even hunting upon them has been prohibited by law. The proclamations of the different governors were opposed to such conduct, as inimical to the interests of the late proprietaries, and of the province in general, and of sound policy. In *Bonnett's Lessee* v. *Devebaugh and Smith*, 3 *Binn.* 187, I have endeavoured to show that the origin of improvement rights was to be imputed chiefly to the uniform usages of the land office, and the encouragement given by the proprietaries and their agents to settlements; but it will not be hazardous to assert, that no encouragement has ever been given by the proprietary officers, to settlements on lands unbought from the *Indians*, unless under military permits for the convenience of the army, and that no decision of the board of property, or of any court of justice, has ever favoured a different doctrine. I have no hesitation therefore in declaring, that the opinion of the Court of Common Pleas, that an improvement made on land before it was purchased from the *Indians*, would vest an interest in equity, without a special promise from the proprietaries or their agents, was erroneous.

The court's answer to the fifth question proposed by the defendant's counsel, I also consider as erroneous. This will be more intelligible by attending to the evidence given on the trial.

The lessor of the plaintiff claimed under two warrants, one dated the 3d of *June* 1762, and the other dated the 28th of *October* 1765. It is material to consider the latter only, on the present question. It issued to *James Kyle* for 200 acres of land, including *his* improvement on the north side of *Juniata*, settled in 1754, interest to be computed from the 1st of *March* 1755. On the 22d of *September* 1766, *George Gabriel* executed a deed poll to *Kyle* of his improvement right in consideration of 5*l.* And the point of enquiry was, whether

<div style="text-align: right">

1812.

WHITE
et al.
*v.*
Lessee of
KYLE.

</div>

the plaintiff could *connect* the warrant right of *Kyle* with the claim of *Gabriel*. From the pronoun *his* in the warrant, it is evident, that it must refer to an improvement then belonging to *Kyle*, and not to one bought up by him nearly one year afterwards. It is admitted that a suitor may buy in an elder right to strengthen his own claim; but he can succeed to no greater interest than the vendor himself had. If *Gabriel* therefore was entitled to any of the advantages, promised to the settlers on *Juniata* by the proprietary agents on the condition of quitting their settlements, he ought to have pursued his claim by applying for the land when the office opened on the 3d of *February* 1755. Failing herein, and not resuming his possession, he forfeits his claim by abandonment, and the warrant of *October* 1765 would be no prosecution of his supposed equitable interest. The claim under it must stand on its own merits, independently of the warrant, and *Kyle*, as the purchaser of the improvement right, must stand precisely in the same situation as *Gabriel* on the 22d *September* 1766.

I think the Court of Common Pleas erred in saying that the improvement purchased after the date of the warrant, would support an equity claimed under the warrant; and therefore concur in opinion that the judgment of the Court of Common Pleas should be reversed and a *venire facias de novo* be awarded.

BRACKENRIDGE J. gave no opinion, having been unable from sickness to attend the argument.

                                    Judgment reversed.